STAR TECHNOLOGY, INC., Plaintiff,

v.

TULTEX CORP., et al., Defendants.

Civ. A. No. 3:91–CV–1067–X.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 14, 1993.

David Carroll Mattka, Jay Francis Whittle, Jr., Mary Beth Marshall, Sylvia Denise Stanley, Munsch Hardt Kopf Harr & Dinan, Dallas, TX, for Star Technology Inc.

Michael V. Powell, Molly Dabney Buck Richard, Russell P. Wilson, Locke Purnell Rain Harrell, Dallas, TX, for Tultex Corp.

Gary Clark Crapster, Strasburger & Price, Dallas, TX, Clayton Edward Fowler, Jr., Barbara Pilo, Joel Tyson Gomez, Fowler Wiles Norton & Keith, Dallas, TX, David P. Metzger, Thomas P. Humphrey, Gena E. Cadieux, Mark D. Colley, Davis Graham & Stubbs, Washington, DC, for The Austin Co.

Maxel (Bud) Silverberg, pro se.

Clayton Edward Fowler, Jr., Joel Tyson Gomez, Fowler Wiles Norton & Keith, Dallas, TX, for Theodore Puckorius.

Michael E. Mears, Arter Hadden Johnson & Bromberg, Dallas, TX, for David Metzger.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

NOW before the Court are Metzger's Motion to Dismiss for Lack of Personal Jurisdiction, filed on November 9, 1993, the response to that motion and the reply to the response. Having considered these filed materials and the applicable law, the Court determines that Metzger's motion should be, and hereby is, **GRANTED.**

This is a $15 million copyright infringement case arising out of software arrangements among the parties. The instant motion pits Plaintiff against Defendant Austin Company's former counsel, David Metzger. Plaintiff accuses Metzger of conspiracy to commit tortious acts. Specifically, the complaint states pertinently as follows:

> Upon information and belief, Austin employee Theodore Puckorius and Austin counsel David Metzger, and others, knowingly and intentionally agreed and conspired to commit and to cause others to commit certain tortious and wrongful acts described in the Complaint. One of the more blatant overt acts resulting from this conspiratorial arrangement is the joint decision and instruction to Austin and Tultex staff in August 1990 to disguise the code revisions and modifications in anticipation of litigation, by replacing the old DPCS and PCS module names and numbers with new CDCS names and numbers.

(Compl. at ¶ 91.) Metzger, who lives in Virginia and has an office in Washington, D.C., maintains that the Court's exercise of personal jurisdiction over him would not comport with due process.

Due process limits the exercise of personal jurisdiction over nonresident defen-

dants to cases in which they purposefully establish "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Whether due process is satisfied must depend on the quality and nature of a defendant's activity in relation to the fair and orderly administration of the laws, which it was the purpose of the due process clause to insure. *Id.* at 319, 66 S.Ct. at 159–60. Thus, the following standards are not to be applied mechanically. When a controversy is related to or arises out of a defendant's contacts with the forum, the United States Supreme Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of *in personam* jurisdiction. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

■ It has been said that when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising "specific jurisdiction" over the defendant. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). For the forum to assert this type of jurisdiction over a nonresident defendant, the defendant must have "purposefully directed" his activities at the residents of the forum, and the litigation must result from alleged injuries that "arise out of or relate to" the defendant's activities directed at the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1984). In other words, a defendant's contacts with the forum state that are asserted as a basis for maintaining personal jurisdiction must be related to the subject matter of the controversy. *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir.1986), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987). It is well settled that specific jurisdiction may arise without the nonresident defendant ever setting foot on the forum state's soil or may arise incident to the commission of a single act directed at the forum. *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987). However, iso-

lated acts may not give rise to a nonresident's foreseeability of being haled into a distant forum. Some single or occasional act may give rise to only an attenuated connection with the forum that would be insufficient to support a court's exercise of personal jurisdiction. *See Burger King Corp.,* 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18.

■ Even when the cause of action does not arise out of or relate to the nonresident defendant's activities in the forum state, due process is not offended by a state subjecting the nonresident to its *in personam* jurisdiction when sufficient contacts between the state and the foreign defendant exist. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). When a state exercises personal jurisdiction in a suit not arising out of or related to the defendant's contacts with the forum, the exercise has been termed "general jurisdiction." *Helicopteros Nacionales de Colombia,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. General jurisdiction exists when the nonresident defendant maintains "continuous and systematic" contacts with the forum state. *Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir.1990).

■ Finally, a court's assertion of *in personam* jurisdiction must "comport with fair play and substantial justice." *Burger King Corp.,* 471 U.S. at 477–78, 105 S.Ct. at 2185. In this reasonableness analysis, a court is to consider such factors as the extent of the defendant's purposeful interjection, the existence of an alternate forum, the burden on the defendant in appearing locally, the forum state's interest in adjudicating the dispute, the shared interest of all states involved in furthering their respective policies, the plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Burger King Corp.,* 471 U.S. at 476–77, 105 S.Ct. at 2184; *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359 (5th Cir.1990).

■ The party seeking to invoke a court's personal jurisdiction bears the burden of proving that the nonresident's contacts are

sufficient for the court to exercise that jurisdiction. *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir.1989). In this showing, the plaintiff need only make out a *prima facie* case of personal jurisdiction, and not only must the court take uncontroverted allegations in the plaintiff's complaint as true, the court must also resolve conflicts between the facts contained in the parties' affidavits in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction has been established. *Bullion,* 895 F.2d at 217; *D.J. Invest., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.* 754 F.2d 542 (5th Cir.1985).

■ Metzger's contacts with Texas are few. He has visited Texas on four occasions, once ten years ago for a two-day national conference, once briefly to meet with a prospective client of Austin in Houston, and twice in relation to the instant lawsuit as an attorney for Austin. Metzger's sporadic contacts do not make him amenable to general jurisdiction. If Plaintiff is correct that the Court may constitutionally exercise jurisdiction over him, that ability arises from specific jurisdiction.

■ Because two of Metzger's Texas contacts, the two-day conference and trip to Houston, are irrelevant to Plaintiff's cause of action against him, they are, of course, insufficient to support jurisdiction. The question then arises, whether Metzger's contacts during his former representation of Austin in this lawsuit will support specific personal jurisdiction. Although Metzger associated a local law firm to represent Austin, he made two trips to Dallas in relation to his representation. One trip was for about a week, during which he participated in settlement discussions, mediation and discovery. The second trip to Dallas involved his arguing a discovery motion before Magistrate Judge Boyle. Metzger's name has appeared on pleadings in this action and he has sent pleadings to Dallas to be filed in this matter. Other than these few contacts, Metzger's work for Austin in this suit appears to have occurred in Washington, D.C., with the remainder of local work handled by local counsel.

Having considered the evidence understanding that Plaintiff need only establish a *prima facie* case, the Court concludes that Metzger's contacts are insufficient to support the Court's exercise of personal jurisdiction over him. His pertinent contacts with Texas, which all occurred during his representation of Austin, are the only arguable contacts out of which Plaintiff's allegations against him might arise.

In similar situations, other courts have found a lack of personal jurisdiction. For instance, in *Austad Company v. Pennie & Edmonds,* 823 F.2d 223 (8th Cir.1987), the United States Court of Appeals for the Eighth Circuit considered a New York firm's representation of a South Dakota client in litigation in Maryland. An attorney-client relationship clearly existed, and the parties exchanged numerous phone calls between New York and South Dakota. Other contacts included courier services, monthly billings mailed to South Dakota and checks paid by a South Dakota bank. The firm also sent two people to South Dakota for a three-day document review. The plaintiff sued the law firm for breach of fiduciary duty and professional negligence because of allegedly excessive fees. Although one might persuasively suggest that the law firm should have reasonably foreseen being haled into a South Dakota court for negligence arising out of its relationship with the plaintiff, the Eighth Circuit held otherwise. *Id.* at 226. The court, borrowing a phrase from *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985), recognized that there existed no "substantial connection" between the defendant and the forum state. *Austad Co.,* 823 F.2d at 226. The court further noted that "the actions giving rise to this lawsuit took place in Maryland, not in South Dakota." *Id.*

The court in *Steinhilber v. Lamoree,* 825 F.Supp. 1003 (S.D.Fla.1992), reasoned similarly. The facts of that case arose from a class action that the defendant, a lawyer, filed in Missouri against the plaintiff, among others. Under court order, the defendant travelled for a settlement conference to Florida, where the plaintiff resided. The case did not settle, and the defendant left. The *pro*

*se* plaintiff then filed suit in Florida, alleging that the defendant had committed torts by threatening his wife and him with the loss of their house and other property if they did not settle the Missouri suit. The court concluded that "[e]ven if a tort was committed in Florida, Defendant Lamoree's brief contact with the state of Florida, at the direction of Judge Oliver, does not satisfy the due process requirement of 'minimum contacts.'" *Id.* at 1006 (citations omitted). Other cases, on similar facts, have come out similarly. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Servidone Constr. Corp.*, 778 F.Supp. 1496, 1505 (D.Minn.1991) ("an attorney-client relationship, regardless of who initiates it, is insufficient in and of itself to support personal jurisdiction"); *American Life and Casualty Ins. Co. v. First American Title Co.*, 772 F.Supp. 574, 579 (D.Utah 1991) ("Attorneys are often asked to perform services for their local clients which services may have some impact in another jurisdiction. To require an attorney to submit to personal jurisdiction in a foreign jurisdiction each time the attorney communicates instructions on behalf of a client does not comport with fundamental fairness.")

█ The foregoing cases explicate that Metzger's status as an attorney practicing in Texas for the limited purpose of this lawsuit will not subject him to personal jurisdiction.

In fact the facts here are even stronger on this point because the attorney-client relationship was between Metzger and Austin, not Metzger and Plaintiff. Those cases also elucidate that the quality of Metzger's contacts is likewise insufficient to subject him to jurisdiction. Although Plaintiff accuses Metzger of conspiracy, that allegation alone will not support the Court's exercise of jurisdiction absent minimum contacts. *See Deininger v. Deininger*, 677 F.Supp. 486, 493 (N.D.Tex.1988) ("Plaintiff, however, has not suggested a single activity by either Defendant which was a part of this alleged conspiracy or fraud *and which took place in Texas.*") (emphasis in original).

Plaintiff supports its allegations against Metzger with a cryptic memo from Theodore Puckorius, another defendant herein, to a Hugh McDonald, Metzger and "PC."[1] Plaintiff also attaches a snippet from the deposition of Puckorius, in which Plaintiff's counsel tries to talk the deponent into counsel's version of what the memo means. The deposition portion ends thus:

Q. Isn't it true, sir, that on August 27th, 1990, you and Mr. McDonald and Mr. Metzger and others knew that the DPCS module numbers and program numbers still existed within the new CDCS . . .

---

1. PM/0-8-17          August 27, 1990

TO:        Hugh McDonald
               Dave Metzger
               PC

FROM:     PM

SUBJECT:     CSX LICENSE AGREEMENT

Attached for your information is the proposed draft license agreement from CSX. This agreement is wholly unacceptable.

Two conditions should be understood.
1) Their argument that Section 16 of the existing agreement gives them rights to all modifications is questionable. The way the section is written you could interpret "modifications" to mean only CSX modifications. Otherwise the wording would mean Tultex changes in perpetuity.
2) Our position now is that we no longer have modifications to the DPSC. We have discarded DPSC and developed a new system CDCS.
We are verifying there is no longer any CSX/Star codes in the new system. Once verified we could move ahead with litigation.
3) We should plan a meeting in early September with Dave Metzger and your legal counsel to detail this strategy.

Note to PC—Please verify that module numbers an program numbers have been replaced.

Q. I do.

A. No, sir, I can't say that.

Q. That's not what this says?

A. You draw that conclusion, sir, I don't.

Q. I do.

The memo and the deposition portion are Plaintiff's evidentiary offering in support of their response to Metzger's motion. The Court fails to see how any of this connects Metzger to Texas.

Plaintiff having failed its burden regarding minimum contacts, the Court need not address the fairness prong of the personal jurisdiction analysis. The Court determines that Metzger's motion must be granted, and he must be dismissed for want of personal jurisdiction.

**SO ORDERED.**