Stephen E. JACKSON,
et al., Appellants,

v.

James L. KINCAID, Jeffrey T. Hills,
and Terry M. Thomas,
Appellees.

No. 13–03–432–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Dec. 9, 2003.

Catherine D. Tobin, Rudy Gonzales, Jr., Chaves, Gonzales & Hoblit, Corpus Christi, Frederick P. Furth, Jon T. King, Furth Firm, Thomas P. Dove, San Francisco, CA, for appellants.

Carol C. Payne, John L. Carter, Ryan Pierce, Vinson & Elkins, George M. Kryder III, Dallas, J.A. 'Tony' Canales, Canales & Simonson, P.C., Corpus Christi, for appellees.

Before Chief Justice VALDEZ and Justices YAÑEZ and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

This is an interlocutory appeal from the trial court's orders granting the special appearances of appellees James L. Kincaid, Jeffrey T. Hills, and Terry M. Thomas (collectively, the "Lawyers").[1] Appellants are Stephen E. Jackson, Bristol Resources Holdings, Inc., Stephens Investment Company, and American Central Gas Technologies Companies, Inc. (collectively, the "Appellants"). We reverse and remand.

### I. BACKGROUND

In September 1999, Jackson and co-principal Stephen Heyman held interests in three Oklahoma-based entities: Bristol Resources Corporation, Bristol Resources 1994 Acquisition Limited Partnership, and Bristol Resources Production Company,

---

1. Parties may challenge by interlocutory appeal trial courts' orders regarding special appearances. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(7) (Vernon Supp.2004).

L.L.C. (collectively, the "Bristol Entities"). Jackson and Heyman contacted the law firm of Crowe & Dunlevy, P.C. for legal representation during the impending insolvencies of the Bristol Entities. Crowe & Dunlevy is an Oklahoma-based law firm with offices in Oklahoma City, Norman, and Tulsa. The Lawyers are Oklahoma residents associated with Crowe & Dunlevy.

In March 2000, two lawsuits filed in Oklahoma alleged fraud and fiduciary breaches against Jackson and Heyman. The litigation derailed a planned $52 million sale of the Bristol Entities. Secured creditors of the Bristol Entities initiated involuntary bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Texas in Corpus Christi, Texas (the "Bristol Bankruptcy"). Crowe & Dunlevy, through the Lawyers, represented Jackson and Heyman in the Bristol Bankruptcy.

Alleging that the Lawyers and Crowe & Dunlevy engaged in conflicts of interest, committed fraud and legal malpractice, were grossly negligent, and breached their contractual and fiduciary duties during their legal representation in the Bristol Bankruptcy, the Appellants filed this litigation. The Lawyers and Crowe & Dunlevy each contested personal jurisdiction and filed special appearances. Crowe & Dunlevy later withdrew its special appearance, entered a general appearance, and is not a party to this appeal. The trial court granted the Lawyers' special appearances and dismissed the claims against them for want of personal jurisdiction. The record does not contain findings of fact or conclusions of law. This interlocutory appeal ensued.

■ In determining the question of personal jurisdiction, a trial court frequently resolves questions of fact. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002), *cert. denied,* 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003). In the absence of written findings of fact and conclusions of law, we imply fact findings necessary to support a trial court's legal conclusions. *See McConnell v. Attorney Gen.,* 878 S.W.2d 281, 284 (Tex.App.-Corpus Christi 1994, no writ). When the appellate record includes the reporter and clerk's records, neither express nor implied fact findings are conclusive and may be challenged for legal and factual sufficiency. *Am. Type Culture Collection,* 83 S.W.3d at 806; *M.G.M. Grand Hotel v. Castro,* 8 S.W.3d 403, 408 (Tex.App.-Corpus Christi 1999, no pet.).

In separate issues addressed to the special appearances of each of the three lawyers, the Appellants contend that the trial court erred as a matter of law with respect to its legal conclusions. They also challenge the legal and factual sufficiency of the evidence to support the trial court's implied findings of fact. Our review of the parties' briefs indicates that they agree about the relevant facts but disagree about their legal significance. We liberally construe the briefing rules. *See* TEX.R.APP. P. 38.9. We interpret the Appellants' issues as challenging the trial court's legal conclusions in refusing to exercise personal jurisdiction over the Lawyers. *See* TEX. R.APP. P. 38.1(e); *see also Selectouch Corp. v. Perfect Starch, Inc.,* 111 S.W.3d 830, 836 (Tex.App.-Dallas 2003, no pet. h.) (construing issue as challenging both legal and factual sufficiency).

## II.  STANDARD AND SCOPE OF REVIEW

■ We review a trial court's challenged conclusions of law as legal questions. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). Thus, we review de novo a trial court's application of the law to the facts in ruling

on a special appearance. *Am. Type Culture Collection,* 83 S.W.3d at 806; *Exito Elecs. v. Trejo,* 99 S.W.3d 360, 366 (Tex. App.-Corpus Christi 2003, pet. filed). In other words, we determine the correctness of the trial court's legal conclusions. *BMC Software,* 83 S.W.3d at 794. If we determine that a conclusion of law is not correct, but the trial court rendered the proper judgment, the incorrect conclusion of law does not require reversal. *Id.* Thus, in reviewing challenges to the trial court's conclusions of law, we sustain the judgment on any legal theory supported by the evidence. *In re A.M.,* 101 S.W.3d 480, 484–85 (Tex.App.-Corpus Christi 2002, no pet.). We do not reverse an incorrect conclusion of law if the findings of fact support a correct legal theory. *Id.* at 485. We examine the entire record, not just the evidence in support of the trial court's legal conclusion. *Valsangiacomo v. American Juice Imp.,* 35 S.W.3d 201, 205 (Tex. App.-Corpus Christi 2000, pet. dism'd w.o.j.) ("On appeal from a special appearance, we review all evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction.").

### III. SPECIAL–APPEARANCE BURDENS

■ The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the personal jurisdiction of the State of Texas. *Am. Type Culture Collection,* 83 S.W.3d at 807; *Exito Elecs.,* 99 S.W.3d at 366. A nonresident defendant challenging a Texas court's personal jurisdiction by special appearance must negate all jurisdictional bases. *Am. Type Culture Collection,* 83 S.W.3d at 807; *Exito Elecs.,* 99 S.W.3d at 366–67. In the absence of sufficient personal-jurisdiction allegations by the plaintiff, the defendant meets its burden of negating all potential bases of personal jurisdiction by presenting evidence that it is a nonresident. *Exito Elecs.,* 99 S.W.3d at 367. Once the defendant produces credible evidence negating all bases of jurisdiction, the burden shifts back to the plaintiff, who bears the ultimate burden to establish that the Texas court has personal jurisdiction over the defendant. *M.G.M. Grand Hotel,* 8 S.W.3d at 408.

■ On appeal, the Lawyers contend that the Appellants did not meet their burden of pleading allegations sufficient to establish the trial court's personal jurisdiction. No motion to quash appears in the record. Thus, the Lawyers waived any complaint that the Appellants did not meet their pleading burden. *See Exito Elecs.,* 99 S.W.3d at 367 (citing *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985) (per curiam)). Accordingly, we find that the burden shifted to the Lawyers to negate all bases for the trial court's exercise of personal jurisdiction. *See Exito Elecs.,* 99 S.W.3d at 366–67. We turn to the record.

### IV. THE JURISDICTIONAL FACTS

A trial court determines a special appearance by referring to the pleadings, any stipulations made by and between the parties, any affidavits and attachments filed by the parties, discovery, and any oral testimony. Tex.R. Civ. P. 120a; *M.G.M. Grand Hotel,* 8 S.W.3d at 407. Both sides filed affidavits in connection with the personal-jurisdiction question. We have complete clerk's and court reporter's records from the trial court. Accordingly, we include the affidavits, any discovery cited by the parties, the clerk's record, and the court reporter's record within the record we review. *See M.G.M. Grand Hotel,* 8 S.W.3d at 409.

Our review of the record as a whole reveals evidence of the following facts, which the Lawyers do not dispute:

- By *pro hac vice* admission to the United States Bankruptcy Court for the Southern District of Texas in Corpus Christi, each of the Lawyers appeared in the Bristol Bankruptcy from September 18, 2000 through February 16, 2001 as counsel of record for Jackson and Heyman. Hills also appeared as counsel of record for Appellant Bristol Resources Holdings, Inc. on court filings in the Bristol Bankruptcy. Because of their expertise in bankruptcy matters, the Lawyers did not secure the services of local counsel in Texas.

- At all relevant times, the Lawyers were employed as attorneys associated with Crowe & Dunlevy and not as sole practitioners.

- Crowe & Dunlevy billed $248,877.25 in legal fees and $7,952.61 in expenses for legal services rendered in connection with the Bristol Bankruptcy. Kincaid billed approximately $100,000.00 for his services in the case. Hills billed approximately $77,000.00. Thomas billed approximately $14,000.00.

- Each of the Lawyers performed legal services in Oklahoma in connection with the Bristol Bankruptcy.

- In addition to appearing *pro hac vice* in the Bristol Bankruptcy and performing legal services in Oklahoma in connection with the representation, Kincaid traveled to Texas a total of five times for creditors' meetings, a meeting with substitute counsel retained by the Appellants, and a court-ordered settlement conference. He participated in Oklahoma in a telephone hearing before the bankruptcy court. He also was involved in the preparation and transmittal to Texas of a "Confidential Mediation Statement" directed to a mediator appointed by the bankruptcy court.

- In addition to appearing *pro hac vice* in the Bristol Bankruptcy and performing legal services in Oklahoma in connection with the representation, Hills traveled to Texas a total of four times for hearings before the bankruptcy court. He participated in Oklahoma in three telephone hearings before the bankruptcy court. He also was involved in the preparation and transmittal to Texas of a "Confidential Mediation Statement" directed to a mediator appointed by the bankruptcy court.

- In addition to appearing *pro hac vice* in the Bristol Bankruptcy, Thomas's role in the representation involved performing legal services in Oklahoma in his capacity as a bankruptcy specialist.

- By local rule, the minimum standards of conduct imposed on lawyers admitted to practice before the United States Bankruptcy Court for the Southern District of Texas are the Texas Disciplinary Rules of Professional Conduct. BANKRUPTCY LOCAL RULE 1001e (S.D.Tex.); LOCAL RULE APPENDIX A, RULE 1A (S.D.Tex.); *see* TEX. DISC. R. PROF. CONDUCT, Rule 8.05 ("[a] lawyer is subject to the disciplinary authority of this state, if admitted to practice in this state or if specially admitted by a court of this state for a particular proceeding").

### V. THE LAW

If a nonresident defendant purposefully avails itself of the privileges and benefits of conducting business in the State of Texas, this State has sufficient contacts to confer personal jurisdiction. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997); *BMC Software*, 83 S.W.3d at 795; *Exito Elecs.*, 99 S.W.3d at 366. The Texas long-arm statute governs Texas

courts' exercise of jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041.045 (Vernon 1997 & Supp.2004); *BMC Software*, 83 S.W.3d at 795. The long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that "does business" in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). The statute recites a non-exclusive list of activities that constitute "doing business." *Id.; BMC Software*, 83 S.W.3d at 795. Section 17.042's broad language extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795.

Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established "minimum contacts" with the forum state. *Id.* A nonresident defendant should not be subject to a foreign court's jurisdiction based on "random," "fortuitous," or "attenuated" contacts. *Id.*

Accordingly, we focus on the defendant's activities and expectations in deciding whether it is proper to call it before a Texas court. *Am. Type Culture Collection*, 83 S.W.3d at 806. The minimum-contacts analysis requires that a nonresident defendant "purposefully avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of the laws of Texas. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant reasonably could anticipate being called into a Texas court. *Am. Type Culture Collection*, 83 S.W.3d at 806 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). It is not the quantity but the quality and nature of the contacts that are important to the minimum-contacts analysis. *See Am. Type Culture Collection*, 83 S.W.3d at 806. Even a single act can support jurisdiction so long as it is substantial. *Royal Mortgage Corp. v. Montague*, 41 S.W.3d 721, 731 (Tex.App.-Fort Worth 2001, no pet.) (citing *Burger King*, 471 U.S. at 475 n. 18, 105 S.Ct. 2174).

The nonresident defendant's minimum contacts with Texas may confer either specific or general personal jurisdiction. *BMC Software*, 83 S.W.3d at 795; *Exito Elecs.*, 99 S.W.3d at 366. Our analysis in this case focuses on specific personal jurisdiction.

### A. Specific Personal Jurisdiction

Specific personal jurisdiction requires that the alleged liability arise from or relate to an activity conducted in Texas. *BMC Software*, 83 S.W.3d at 795; *Exito Elecs.*, 99 S.W.3d at 366. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *Am. Type Culture Collection*, 83 S.W.3d at 806. The nonresident defendant's contacts must be purposefully directed at Texas so that the defendant could foresee being haled into court here. *M.G.M. Grand Hotel*, 8 S.W.3d at 409 (citing *CMMC v. Salinas*, 929 S.W.2d 435, 438 (Tex.1996)).

## B. Fair Play and Substantial Justice

Once we determine that a nonresident defendant purposefully established minimum contacts with Texas, we evaluate the contacts in light of other factors to determine if the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex.1991) (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113–15, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174). These factors include: (1) "the burden on the defendant"; (2) the interests of the forum State in adjudicating the dispute; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Guardian Royal,* 815 S.W.2d at 228 (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559; *Burger–King,* 471 U.S. at 477, 105 S.Ct. 2174). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Guardian Royal,* 815 S.W.2d at 228 (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174).

## VI. ANALYSIS

### A. Specific Personal Jurisdiction

As a threshold issue, the Lawyers invoke the fiduciary-shield doctrine. *See D.H. Blair Inv. Banking Corp. v. Reardon,* 97 S.W.3d 269, 277 (Tex.App.-Houston [14th Dist.] 2002, pet. dism'd w.o.j.) (op. on reh'g). The fiduciary-shield doctrine protects a corporate officer or employee from the trial court's exercise of general personal jurisdiction when all of the individual's contacts with Texas were on behalf of the employer. *SITQ E.U., Inc. v. Reata Rests., Inc.,* 111 S.W.3d 638, 650–51 (Tex.App.-Fort Worth 2003, pet. filed); *Brown v. Gen. Brick Sales Co.,* 39 S.W.3d 291, 297–98 (Tex.App.-Fort Worth 2001, no pet.). The fiduciary-shield doctrine has not been expressly adopted by the Texas Supreme Court. *Brown,* 39 S.W.3d at 300. The Lawyers assert they are not subject to the personal jurisdiction of the trial court because their contacts with Texas were in a representative capacity. They argue that Crowe & Dunlevy's contacts with Texas cannot be imputed to each lawyer individually.

We note that the fiduciary-shield doctrine has been applied only to the exercise of general personal jurisdiction over a nonresident defendant. *See id.* ("[W]here intermediate appellate courts have applied some aspects of the fiduciary shield doctrine, they have limited its application to jurisdictional claims based on the theory of general jurisdiction as opposed to specific jurisdiction."). Moreover, the fiduciary-shield doctrine does not protect an employee from specific personal jurisdiction as to intentional torts or fraudulent acts for which the employee may be held individually liable. *SITQ,* 111 S.W.3d at 651; *D.H. Blair,* 97 S.W.3d at 277. The Appellants allege conduct for which the Lawyers could be held individually liable. Accordingly, we hold that the fiduciary-shield doctrine is not available to the Lawyers as a defense to the trial court's exercise of specific personal jurisdiction. *See D.H. Blair,* 97 S.W.3d at 278.

The Lawyers each provided extensive legal representation in connection with bankruptcy proceedings in a Texas federal bankruptcy court. They each appeared *pro hac vice* before the Texas bankruptcy court. They did not associate

local counsel.[2] In appearing in bankruptcy court in the Southern District of Texas, the Lawyers voluntarily subjected themselves to the minimum standards of professional conduct imposed by the attorney disciplinary authority in Texas. The Lawyers argue that formal appearance in a federal court in Texas is not a critical factor in determining personal jurisdiction. They rely on *Eakin v. Acosta*, 21 S.W.3d 405 (Tex.App.-San Antonio 2000, appeal dism'd by agreement), *disapproved on other grounds, BMC Software*, 83 S.W.3d at 794 n. 1. However, the lawyer's in-court representation at issue in *Eakin* was of a former client with no connection to the plaintiff or to the malpractice claim asserted against the lawyer. *Eakin*, 21 S.W.3d at 409. The San Antonio court of appeals found only that the nonresident defendant attorney's prior appearance on behalf of another party in an unrelated lawsuit did not "provide a basis for asserting specific jurisdiction." *Id.* (citing *Guardian Royal*, 815 S.W.2d at 230). Here, the Appellants assert that the Lawyers' appearances in the Bristol Bankruptcy support specific jurisdiction because their claims arise from or relate to that contact with the State of Texas. *See Am. Type Culture Collection*, 83 S.W.3d at 806.

The Lawyers correctly note that the local rule that subjects attorneys who appear in bankruptcy court in the Southern District of Texas to the standards of conduct reflected in the Texas disciplinary rules does not necessarily supply the standard of care by which the performance of legal services by Oklahoma lawyers to Oklahoma clients will be measured. *See* BANKRUPTCY LOCAL RULE 1001e (S.D.Tex.); LOCAL RULE APPENDIX A, RULE 1A (S.D.Tex.). The Lawyers argue that con-

flicts-of-law law will determine the applicable standard of care on the merits. The Lawyers confuse "standard of care" with "standard of conduct." We are not concerned with the merits. The bankruptcy local rule is significant in the minimum-contacts analysis because the Lawyers, in purposefully availing themselves of the privilege of appearing before a Texas court, expressly invoked the benefits and protections of the laws of Texas in the form of the Texas disciplinary rules. *See Am. Type Culture Collection*, 83 S.W.3d at 806.

The Lawyers direct our attention to the fact that the bulk of the legal representation they provided in connection with the Bristol Bankruptcy was performed in Oklahoma. For the proposition that a *pro hac vice* appearance in federal court does not support specific personal jurisdiction when the majority of the services are performed elsewhere, the Lawyers cite *Star Technology v. Tultex Corp.*, 844 F.Supp. 295, 298 (N.D.Tex.1993). However, unlike the Lawyers in this case, the nonresident defendant lawyer in *Star Technology* had associated local counsel in the underlying lawsuit. *Id.* His involvement in Texas was limited to twice traveling here to participate in discovery and settlement matters, including one appearance in a discovery hearing before a magistrate judge. *Id.* Other than making those two trips to Texas and filing documents from his office in Washington, D.C., the nonresident lawyer's work occurred outside Texas, "with the remainder of local work handled by local counsel." *Id.* Further, the federal district judge observed:

Although Plaintiff accuses Metzger of conspiracy, that allegation alone will not support the Court's exercise of jurisdic-

**2.** Substitute counsel briefly appeared in the Bristol Bankruptcy before the Crowe & Dun-

levy lawyers withdrew.

tion absent minimum contacts. *See Deininger v. Deininger*, 677 F.Supp. 486, 493 (N.D.Tex.1988) ("Plaintiff, however, has not suggested a single activity by either Defendant which was a part of this alleged conspiracy or fraud and which took place in Texas.").

*Star Technology*, 844 F.Supp. at 299. More significantly, however, the plaintiff who sought to invoke the federal court's personal jurisdiction over the nonresident lawyer was not the lawyer's client in the lawsuit, but rather the opposing party. *Id.* at 298.

Here, the Appellants allege conflicts of interest in the Lawyers' concurrent representation of creditors involved in the Bristol Bankruptcy, a claim that permeates the whole of the Lawyers' representation and the work they performed both in Oklahoma and in Texas. Some of the allegations specifically focus on the effect of the conflicts of interest on the Lawyers' advice with respect to a court-ordered settlement conference held in Texas. The Appellants also allege professional negligence in untimely filings in the Bristol Bankruptcy, a claim that focuses on services performed both in Oklahoma and in Texas. The Lawyers attempt to address the merits of these claims with arguments directed to the Appellants' proof of the allegations and the Lawyers' counter-proof. Again, we are not concerned with the merits.

The Lawyers also point out that their clients' creditors chose Texas as the forum, not them. Consequently, the Lawyers maintain, the services they provided in connection with the Bristol Bankruptcy were not purposefully directed at Texas. This argument ignores the fact that the clients could (and eventually did) retain Texas counsel. The Bristol Entities may not have had a choice about the forum selected by their creditors, but their Oklahoma lawyers had a choice about whether to represent them in that forum. They chose to do so. They now seek to avoid the consequences of that choice.

The Lawyers' activities in providing legal representation in connection with the Bristol Bankruptcy included direct acts within Texas as well as conduct outside Texas. We cannot characterize the Lawyers' contacts with Texas as random, fortuitous, or incidental. *See BMC Software*, 83 S.W.3d at 795. We find that each lawyer's *pro hac vice* appearance in the Bristol Bankruptcy was a substantial, purposeful contact directed at the State of Texas. *See Am. Type Culture Collection*, 83 S.W.3d at 806; *see also Montague*, 41 S.W.3d at 731. We also find that the Appellants' causes of action arise from or relate to the Lawyers' *pro hac vice* appearances and legal representation in the Bristol Bankruptcy. *See id.; see also M.G.M. Grand Hotel*, 8 S.W.3d at 409. The Lawyers' contacts with Texas in providing legal representation in connection with the Bristol Bankruptcy justify a conclusion that they reasonably could anticipate being called into a Texas court. *See Am. Type Culture Collection*, 83 S.W.3d at 806. We hold that the Lawyers did not meet their burden of negating specific jurisdiction as a basis for the trial court's exercise of jurisdiction. *See BMC Software*, 83 S.W.3d at 795.

### B. *Fair Play and Substantial Justice*

■ The Lawyers also argue that the imposition of personal jurisdiction does not comport with traditional notions of fair play and substantial justice. We note that the trial court retains personal jurisdiction over Crowe & Dunlevy, which apparently conceded that its substantial legal representation of Texas clients subjects it to general personal jurisdiction here. The Lawyers are all witnesses to the claims against their law firm. Defending individ-

ual claims against them in Texas at the same time does not impose any significant additional burden on the Lawyers. *See Guardian Royal,* 815 S.W.2d at 228. Rather, it is in the interstate judicial system's interest of efficient resolution of controversies, as well as in the Appellants' interest, for the Texas court to hear the case against the Lawyers at the same time it hears the case against the law firm that employs them. *See id.* Further, the Appellants have alleged acts that may have affected real property in the State of Texas, including oil and gas interests. *See id.* Where Texas property interests are at issue, Texas has a heightened interest in adjudicating the dispute. *See El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.,* 82 S.W.3d 622, 638 (Tex.App.-Corpus Christi 2002, pet. dism'd w.o.j.) (op. on reh'g). Finally, the exercise of personal jurisdiction over the Lawyers as well as their law firm serves "the shared interest of the several States in furthering fundamental substantive social policies" with regard to balancing the privileges and burdens of practicing law in multiple jurisdictions. *See Guardian Royal,* 815 S.W.2d at 228. Accordingly, we further hold that the exercise of specific personal jurisdiction over the Lawyers comports with traditional notions of fair play and substantial justice. *See id.*

## VII. CONCLUSION

Without hearing oral argument, we sustain the Appellants' three issues. We reverse the trial court's orders granting the Lawyers' special appearances and remand for further proceedings.