NUMBER 13-03-00594-CV
 
 
 
COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS
 
CORPUS CHRISTI - EDINBURG


 


IN RE: KAJIMA INTERNATIONAL, INC., Relator.





On Original Proceeding




O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo

Opinion by Justice Castillo

         In this original proceeding, we are called on to address application to a multi-million dollar judgment of changes in the postjudgment interest rate in Texas enacted
by the 78th Legislature in 2003. The relator and judgment creditor is Kajima
International, Inc. ("Kajima"), an international construction firm. The real party in
interest and judgment debtor is Formosa Plastics Corporation, USA ("Formosa"), a
petrochemical giant with Texas operations in Point Comfort, Calhoun County, Texas. 
                                   I. PRELIMINARY BACKGROUND
         The judgment against Formosa, filed April 12, 2002, awarded Kajima
$15,432,123.45 in actual fraud damages and $14,210,269.65 in prejudgment
interest,


 for a total judgment of $29,642,393.10. It also provided for postjudgment
interest:       
 Plaintiff shall recover post-judgment interest at the rate of ten percent per
annum, on all sums herein awarded from the date of this judgment until
paid. Said interest shall be compounded annually. 

         Formosa filed a notice of appeal to this Court on July 7, 2002 in Cause
No. 13-02-385-CV.


 While the appeal was pending, on March 7, 2003, the trial court
granted Formosa's request to supersede the judgment with a deposit of
$37,900,000.00 in United States Treasury notes. The trial court's Order on Motion
Approving Substitution of Deposit in Lieu of Supersedeas Bond provided that the
deposit was to "cover the value of the judgment and accrued interest as of
September 30, 2004." 
         On August 11, 2003, Formosa filed a motion with the trial court seeking
to reduce the amount of security required to stay enforcement of the judgment. 
See Tex. R. App. P. 24.3(a).


 Formosa argued that House Bill 2415
("HB 2415"), which the Texas Legislature passed, effective June 20, 2003, as an
amendment to section 304.003(c) of the Texas Finance Code, had the effect
of reducing the rate of postjudgment interest accruing on the judgment from
ten percent to five percent per annum.


 The trial court held a hearing on
Formosa's motion on September 12, 2003. 
         Meanwhile, the underlying appeal in Cause No. 13-02-385-CV was argued and
submitted on September 24, 2003. On October 1, 2003, the trial court granted
Formosa's motion and reduced the amount required to suspend execution of the
judgment to $32,000,000.00 "through October 12, 2003." The trial court also issued
findings of fact and conclusions of law. Kajima then filed with this Court in the
pending appeal its "Motion to Review Sufficiency of Security and Motion to Stay Order
Modifying Security" on October 3, 2003 (the "Rule 24.4 Motion"). That same day,
we ordered the parties to file supplemental briefs regarding application to the
underlying appeal of the amendment to the finance code. We construed the
Rule 24.4 Motion as an original proceeding and, on October 10, 2003, stayed the trial
court's order modifying the security. 
         In its response to Kajima's Rule 24.4 Motion, Formosa argues that Kajima
waived its complaint by not objecting to the trial court's order or to its findings of fact
and conclusions of law. Accordingly, we first address the preservation-of-error issue. 
                                     II. PRESERVATION OF ERROR
         Formosa correctly cites the general rule that we will not review claims of error
unless the party first brought its complaint to the attention of the trial court and
secured a ruling. See Tex. R. App. P. 33.1(a)(1); see also Winters v. Arm Ref. Co.,
830 S.W.2d 737, 738 (Tex. App.–Corpus Christi 1992, writ denied). Therefore,
Formosa argues, Kajima waived any challenge to the trial court's legal conclusion that
HB 2415 applies to the judgment now on appeal by not objecting to the order or its
underlying findings and conclusions. Kajima responds that "[l]egal conclusions of the
trial court are always reviewable." See Pegasus Energy Group, Inc. v. Cheyenne
Petroleum Co., 3 S.W.3d 112, 121 (Tex. App.–Corpus Christi 1999, pet. denied). 
         This Court held in Winters that following a non-jury trial, "a motion for judgment
or objections to the judgment directing the trial court's attention to the error was
necessary in order to complain that the trial court erred by entering that judgment." 
Winters, 830 S.W.2d at 738. In Winters, the record was "devoid of any requests,
objections, or motions calling the court's attention to errors in its judgment." Id. 
Here, however, Kajima opposed Formosa's motion that the trial court apply HB 2415
to the judgment, vigorously objected to reduction of the security, and argued that the
amendment does not apply to judgments pending on appeal.
         Winters stands for the proposition that Kajima was required to voice to the trial
court its objection to application of HB 2415. Kajima did so. The trial court implicitly
overruled Kajima's objection when it granted Formosa's motion and ordered the
security reduced. See Tex. R. App. P. 33.1(a)(2)(A). Kajima was not required to renew
its complaint after entry of the trial court's order reducing the security. See Tex. R.
App. P. 33.1(c).    
         Accordingly, we hold that Kajima preserved its challenge to the trial court's
application of HB 2415 to reduce the amount required to secure the judgment. We
turn to the rules of appellate procedure governing suspension of enforcement of civil
judgments pending appeal. 

III. SUSPENSION OF ENFORCEMENT OF JUDGMENTS
A. Amount of Bond, Deposit, or Security
         Our procedural rules allow a judgment debtor to supersede a judgment and
suspend its enforcement by posting security set by the trial court. Tex. R. App.
P. 24.1, 24.2; In re Crow-Billingsley Air Park, 98 S.W.3d 178, 179 (Tex. 2003) (orig.
proceeding) (per curiam). Rule 24 authorizes a trial court to "make any order
necessary to adequately protect the judgment creditor against loss or damage that the
appeal might cause." Tex. R. App. P. 24.1(e); Miller v. Kennedy & Minshew, P.C.,
80 S.W.3d 161, 166 (Tex. App.–Fort Worth 2002, no pet.). Accordingly, to stay
enforcement of a judgment for the recovery of money, the appellant must post
security in "at least the amount of the judgment, interest for the estimated
duration of the appeal, and costs." Tex. R. App. P. 24.2(a)(1); see Lowe v. Monsanto
Co., 965 S.W.2d 741, 742 (Tex. App.–El Paso 1998, pet. denied) (per curiam). 
         Nonetheless, the Texas Supreme Court has recognized, in certain instances, that
the general rule requiring bond or other security in the total amount of a money
judgment may effectively deny an appellant the right to appeal. Isern v. Ninth Court
of Appeals, 925 S.W.2d 604, 606 (Tex. 1996) (orig. proceeding) (per curiam); McDill
Columbus Corp. v. Univ. Woods Apts., 7 S.W.3d 923, 925 (Tex. App.–Texarkana
2000, no pet.). To guard against that possibility and yet protect the judgment
creditor's right to collect its judgment, the supreme court amended the appellate rules
to provide for reduced or alternate security. Isern, 925 S.W.2d at 605; McDill
Columbus Corp., 7 S.W.3d at 925. If the trial court finds that: (1) posting "the
amount required by [rule 24.2(a)] is likely to cause the judgment debtor substantial
economic harm"; and (2) posting "a lesser amount will not substantially impair the
judgment creditor's ability to recover under the judgment," the trial court "may order
a lesser amount than required by [rule 24.2(a)]." Tex. R. App. P. 24.2(b). The party
seeking alternate security bears the burden of proving the "substantial economic harm
to debtor" and "no substantial impairment to creditor" requirements imposed by rule
24.2(B). McDill Columbus Corp., 7 S.W.3d at 925. 
B. Continuing Trial Court Jurisdiction
         Rule 24.3 provides that "[t]he trial court has continuing jurisdiction to do the
following: (1) order the amount and type of security and decide the sufficiency of
sureties; and (2) if circumstances change, modify the amount or type of security
required to continue the suspension of a judgment's execution." Tex. R. App. P. 24.3. 
The continuing jurisdiction conferred by rule 24.3 extends "[e]ven after the trial court's
plenary power expires." Id. 
C. Scope and Standard of Appellate Review
1. Scope of Review 
         On appeal of a trial court's order setting the amount and form of security,
rule 24.4 authorizes us to review: "(1) the sufficiency or excessiveness of the amount
of security; (2) the sureties on any bond; (3) the type of security; (4) the determination
whether to permit suspension of enforcement; and (5) the trial court's exercise of
discretion under [rule 24.3(a)]." Tex. R. App. P. 24.4(a); McDill Columbus Corp.,
7 S.W.3d at 925. Our "[r]eview may be based both on conditions as they existed at
the time the trial court signed an order and on changes in those conditions afterward." 
Tex. R. App. P. 24.4(b). 
2. Standard of Review 
         We review a trial court's challenged conclusions of law as legal questions. BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Jackson v.
Kincaid, 122 S.W.3d 440, 445 (Tex. App.–Corpus Christi 2003, pet. filed). Thus, we
review de novo a trial court's application of the law to the facts. In other words, we
determine the correctness of the trial court's legal conclusions. BMC Software,
83 S.W.3d at 794. We are not obligated to give any particular deference to those
conclusions. Pegasus Energy Group, 3 S.W.3d at 121. As the final arbiter of the law,
we have the power and the duty to independently evaluate legal determinations of the
trial court. Id. If we determine that a conclusion of law is not correct, but the trial
court rendered the proper judgment, the incorrect conclusion of law does not require
reversal. Id. Thus, in reviewing challenges to the trial court's conclusions of law, we
sustain the judgment on any legal theory supported by the evidence. In re A.M.,
101 S.W.3d 480, 484-85 (Tex. App.–Corpus Christi 2002, orig. proceeding). We do
not reverse an incorrect conclusion of law if the findings of fact support a correct legal
theory. Id. at 485. 
         We apply an abuse-of-discretion standard in conducting the review authorized
by rule 24.4(b). Miller, 80 S.W.3d at 165. A trial court abuses its discretion in
determining the legal principles that control its ruling if the court clearly fails to analyze
or apply the law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig.
proceeding).  
 IV. THE QUESTION AT ISSUE
         Kajima does not assert that Formosa did not meet its burden to prove that
continuation of the original security would subject Formosa to "substantial economic
harm" and that Kajima would suffer "no substantial impairment" in its ability to collect
its judgment.


 See Tex. R. App. P. 24.2(b); see also McDill Columbus Corp., 7 S.W.3d
at 924-25. Rather, Kajima argues: (1) the trial court is without jurisdiction to modify
the judgment; (2) the modified amount of security is therefore less than the value of
the judgment; and (3) even if the trial court had the power to modify the judgment,
application of HB 2415 gives the amendment an improper retroactive effect. Kajima
otherwise does not challenge the trial court's authority to act under rule 24. 
         In its response, Formosa agrees that the trial court lacked plenary power to
modify the terms of the judgment by the time HB 2415 became law. It concedes that
this Court, not the trial court, has jurisdiction over the judgment at this time. It
acknowledges that its purpose in moving to reduce the amount of security was to
allow the trial court the opportunity to consider application of HB 2415. Accordingly,
we address only the question of the statute's applicability to the trial court's
determination of the amount required to secure the judgment. See Tex. R. App.
P. 47.1. 
V. STATUTORY INTERPRETATION OF HB 2415
A. The Rules of Statutory Construction
         Our purpose in construing a statute is to determine the Legislature's intent. 
Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.3d 697, 706 (Tex. 2002). As a starting
point, we construe statutes as written and, if possible, ascertain intent from the
statutory language. Id. We also may consider other factors, including the object the
statute seeks to obtain, legislative history, and the consequences of a particular
construction. Id.; see Tex. Gov't Code Ann. § 311.023 (Vernon 1998). Moreover,
we always must consider a statute as a whole and attempt to harmonize its various
provisions. Id. If possible, we also must construe statutes to avoid constitutional
infirmities. Id.; see Tex. Gov't Code Ann. § 311.021(1) (Vernon 1998). 
         The Code Construction Act creates presumptions that inform our analysis of the
Legislature's intent in enacting a statute. First, "[a] statute is presumed to be
prospective in its operation unless expressly made retrospective." Tex. Gov't Code
Ann. § 311.022 (Vernon 1998). Further, we presume that the Legislature intended: 
(1) compliance with the State and federal constitutions; (2) the entire statute to
be effective; (3) a just and reasonable result; (4) a result feasible of execution;
and (5) the favoring of public interest over any private interest. Tex. Gov't Code
Ann. § 311.021 (Vernon 1998); Tex. Mun. League v. Tex. Workers' Comp. Comm'n,
74 S.W.3d 377, 381 (Tex. 2002). We begin with an analysis of the words the
Legislature used in HB 2415. 
B. The Plain Language of the Statute
         As codified, HB 2415 reads in its entirety:
§ 304.003.Judgment Interest Rate: Interest Rate or Time Price
Differential Not in Contract
 
(a)A money judgment of a court of this state to which
Section 304.002 does not apply, including court costs awarded in the
judgment and prejudgment interest, if any, earns postjudgment interest
at the rate determined under this section.
 
(b)On the 15th day of each month, the consumer credit
commissioner shall determine the postjudgment interest rate to be applied
to a money judgment rendered during the succeeding calendar month.
 
(c)The postjudgment interest rate is: 
 
(1)the prime rate as published by the Federal Reserve
Bank of New York on the date of computation;
 
(2)five percent a year if the prime rate as published by
the Federal Reserve Bank of New York described by
Subdivision (1) is less than five percent; or
 
(3)15 percent a year if the prime rate as published by
the Federal Reserve Bank of New York described by
Subdivision (1) is more than 15 percent. 
 
Tex. Fin. Code Ann. § 304.003 (Vernon Supp. 2004). The enabling clause of the
statute provides that "[t]he changes in the law made by this Act apply in a case in
which a final judgment is signed or subject to appeal on or after the effective date of
this Act."


 The question of the applicability of HB 2415 to this case turns on the
Legislature's intent in enacting the phrase "in which a final judgment is signed or
subject to appeal." In other words, does the enabling clause "expressly" make the
statute "retrospective" so as to rebut the presumption that it is "prospective in its
operation"? See Tex. Gov't Code Ann. § 311.022 (Vernon 1998). 
         We note that the first appellate court to confront this issue held that "[t]he plain
meaning of the phrase 'subject to an appeal' when used to describe a judgment
traditionally means that the judgment fully and finally disposes of all parties and all
issues before the trial court and therefore is capable of being appealed." Columbia
Med. Ctr. of Las Colinas v. Bush, 122 S.W.3d 835, 865 (Tex. App.–Fort Worth 2003,
pet. denied); accord Tesfa v. Stewart, No. 2-03-219-CV, 2004 Tex. App. LEXIS 3470,
at *19 (Tex. App.–Fort Worth Apr. 15, 2004, no pet. h.) ("Here, the final April 25,
2003 judgment was 'signed' and was 'subject to appeal' on the date it was signed,
before the June 20, 2003 and September 1, 2003 effective dates of the amendments
to the finance code."); Warrantech Corp. v. Computer Adapters Servs.,
No. 2-03-002-CV, 2004 Tex. App. LEXIS 3212, at *36 (Tex. App.–Fort Worth Apr. 8,
2004, rule 53.7(F) mot. for extension of time filed) ("The judgment at issue here was
signed and became capable of being appealed months before the effective date of the
amendment; therefore, the 5% postjudgment interest rate in amended
section 304.003 does not apply.").


 
         We also note that one commentator has opined that the amendment "does not
apply to appeals that were already pending when the legislation went into effect." See
Jennifer Tillison, Subject to Appeal, The Appellate Advocate, Vol. XVI, No. 4, p. 1
(Winter 2004). Tillison concluded:
In the absence of any specific legislative history, it must be presumed
that the Legislature did not intend to add a new, unpreserved issue to
every case involving a money judgment pending before every Texas court
of appeals, the Texas Supreme Court, and federal courts applying Texas
law.

Id. at p. 10 (emphasis added). To date, none of the cases that have analyzed the issue 
has discussed the complete legislative histories of the amendments. On our order, the
parties here have provided detailed legislative histories of both amendments. Those
legislative histories, Formosa argues, conclusively prove the Legislature's intent that
the amendments apply to all pending appeals. In analyzing Formosa's contention, we
find it illuminating to place the time line of Formosa's appeal within the context of the
legislative histories of HB 4 and HB 2415.  
C. The Appellate and Legislative Chronologies
         As noted above, the final judgment in this case is dated April 12, 2002. 
Formosa filed its notice of appeal on July 9, 2002. On February 17, 2003, during the
regular session of the 78th Legislature, legislation amending the finance code was
introduced in the Texas House of Representatives. The HB 4 version of the
amendment provided:  "This article applies only to a suit in which a judgment is signed
on or after the effective date of this Act, without regard to whether the suit
commenced before, on, or after that date." HB 2415 was introduced on March 12,
2003. At that time, the HB 2415 version of the legislation did not address the
applicability of the amendment. 
         Meanwhile, Formosa filed its appellant's brief on April 16, 2003. Among its
issues on appeal, Formosa sought an adjustment of the prejudgment interest awarded
in the judgment to reflect settlement credits. Formosa's brief did not challenge the
rate of prejudgment or postjudgment interest. 
         On April 25, 2003, HB 2415 passed the House, still without addressing the
applicability of the amendment. The Texas Senate received HB 2415 from the House
on April 28, 2003. On May 1, 2003, it was read for the first time in the Senate and
referred to the Senate Jurisprudence Committee. 
         On May 5, 2003, witness Michael Graham, a lawyer, testified before the Senate
State Affairs Committee regarding the postjudgment interest provisions contained in
HB 4: 
We believe the committee substitute which provides for a prime rate
interest without caps is appropriate. It is designed to create a problem
or fix a problem created by the prior statute which provided for a floating
interest rate that was capped between 10 and 20 percent – the floating
– that interest rate, if it were not capped under the mechanism provided
under the existing statute would be 1-1/2 percent. So we think a prime
rate is appropriate without caps because it eliminates the future problem
of what happens when the caps get out of whack. The second thing we
would like to talk about is the elimination of prejudgment interest on
future damages which was a quirk in the prior statute, which no one has
ever been effectively able to explain to a client of why he should pay
prejudgment interest on things that haven't happened yet in the future. 
The final point is the effective date of the statute. The purpose of these
amendments are [sic] to create or to fix an existing inequity we believe
that it should be fixed as quickly as possible and, therefore, should apply
to all suits within the judicial process currently and not to causes of
action accruing in the future. 

         On May 12, 2003, a Senator explained HB 2415 to the Senate Jurisprudence
Committee: 
Chairman:Chair lays out House Bill 2415 and recognizes [the Senator]
to explain the bill. 
 
Senator:Thank you, Mr. Chairman. Members, this is a companion to
Senate Bill 1156, which this Committee voted out in April. 
As you remember, this bill proposes to change how Texas
calculates the postjudgment interest rates. Current law
provides that the calculation as used in the 52 week
treasury bill rate. Well, unfortunately there are no more 52
week treasury bills so there is no rate with which to set out
postjudgment rates to. 
 
Chairman:Some people kind of like that. 
 
Senator:Some people think that is an excellent deal, but we 
probably ought to have something. The senate bill last time
proposed the weekly average one year constant maturity
treasury yield, but that was inconsistent with what was in
House Bill 4, so this bill is, or the language in this bill is,
consistent with what House Bill 4 proposes, and that is the
prime rate as published by the Federal Reserve Bank of New
York on the date of computation. 

         A Bill Analysis of HB 2415 dated May 13, 2003, states that the bill "[m]akes
application of this Act prospective." On May 14, 2003, the Senate Committee
Version of HB 2415 was filed. The language "[t]his Act applies only to a suit in which
a judgment is signed or subject to appeal on or after the effective date of this Act" 
appeared for the first time in the committee substitute. By Senate Floor Amendment
No. 8 on May 16, 2003, the Senate amended the postjudgment interest provisions
contained in HB 4 to include the same language. In discussing the amendment on the
Senate floor, a Senator explained:
Members, this section or this amendment amends Section 6.04 on
page 15, line 20. This is the area of postjudgment interest. The whole
idea behind these are to encourage lawsuits to be settled and the way it
currently operates, if you don't include into the mix these – the cases
that are on appeal – then you have an unequal or a disincentive not to
settle. So, the current postjudgment interest rate is ten percent. Now
this bill sets it up and ratches [sic] it to the prime rate and most all agree
that the reason we were doing that was because the current ten percent
is an excessive amount and provides an actual windfall on these
judgments so this rate also continues throughout the appeals process and
can discourage settlements between the parties of the lawsuit. So this
amendment attempts to alleviate that problem and brings equity to all
cases. 

         Another Senator concurred with the need for the floor amendment, stating that
when the amendment was brought to the committee "we weren't exactly sure at that
time whether or not it was, in fact, needed, but I'm convinced, I am persuaded now
that it is a good amendment and it is acceptable." 
         Meanwhile, on May 29, 2003, Kajima filed its appellee's brief in Cause
No. 13-02-385-CV. On May 31, 2003, the Conference Committee on HB 4 reported
in its section-by-section analysis that the postjudgment interest provisions contained
in HB 4 provided that "[t]he changes in law made by this article apply in any case in
which a final judgment is signed or is subject to appeal on or after the effective date
of this Act." On June 1, 2003, the House adopted the Conference Committee Report. 
That same date, the Senate followed suit. 
         Similarly, also on May 31, 2003, the Conference Committee on HB 2415
reported that HB 2415 provided that "[t]he changes in law made by this article apply
in any case in which a final judgment is signed or is subject to appeal on or after the
effective date of this Act." On June 1, 2003, the House adopted the Conference
Committee Report, as did the Senate. The Governor of Texas signed HB 4 on
June 11, 2003, with an effective date of September 1, 2003. See Tillison, Subject
to Appeal, at p. 6. 
         Meanwhile, on June 18, 2003, Formosa timely filed its reply brief. In its
appellant's brief, Formosa had argued that it was entitled to a recalculation of
prejudgment interest to reflect credits for written settlement offers it made to Kajima. 
In its reply brief, Formosa again asserted that the case should be remanded for
recalculation of the prejudgment interest. See Johnson & Higgins of Tex., Inc. v.
Kenneco Energy, Inc., 962 S.W.2d 507, 532 (Tex. 1998) (holding that "prejudgment
interest accrues at the rate for postjudgment interest. . . ."). For the first time,
however, Formosa also argued that HB 4's amendment to the finance code applied to
the appeal. Even excluding settlement credits, Formosa contended, the total amount
of prejudgment interest should be reduced from $14,210,269.65 to $7,105,134.83. 
Formosa did not note the effective date of the statute, which was not until
September 1, 2003. 
         Two days after Formosa filed its reply brief, on June 20, 2003, the Governor
signed HB 2415, giving it an effective date of June 20, 2003. See Tillison, Subject
to Appeal, at p. 6. On August 11, 2003, Formosa filed its motion to modify the
amount required to secure Kajima's judgment against it, citing HB 2415 and its
effective date of June 20, 2003.  
 D. The Implications of the Legislative Histories
         Formosa argues that the intent of the Legislature could not be more obvious
from the Senator's explanation of the Senate floor amendment: "the whole idea
behind these [is] to encourage lawsuits to be settled" on appeal.


 We are not
persuaded, however, that the legislative histories of the two amendments, including
the Senator's statement, carry such weight as to compel any conclusion different from
that uniformly reached by our sister courts: the term "subject to appeal" as used in
HB 4 and HB 2415 means that the judgment "fully and finally disposes of all parties
and all issues before the trial court and therefore is capable of being appealed."


 See,
e.g., Bush, 122 S.W.3d at 865. We note that the supreme court has denied the
petition for review in Bush. Accordingly, we find that this judgment was neither
"signed" nor "subject to appeal" on or after the effective dates HB 4 or HB 2415. 
Rather, the final April 12, 2003 judgment was "signed" and was "subject to appeal"
on the date it was signed, before the June 20, 2003 and September 1, 2003 effective
dates of the amendments. See Tesfa, 2004 Tex. App. LEXIS 3470, at *19. We, too,
decline to apply the 2003 legislative changes in postjudgment interest rates to cases
with final judgments pending on appeal on the amendments' effective dates. See id.;
cf. Hoeffner, Bilek & Eidman, L. L. P., v. Guerra, No. 13-01-503-CV, 2004 Tex. App.
LEXIS 4792, at *30-*31 (Tex. App.–Corpus Christi May 27, 2004, no pet. h.)
(memorandum opinion) (modifying judgment to reflect award of ten percent
postjudgment interest). 
VI. CONCLUSION
         We find that the trial court failed to analyze or apply the law correctly and, as
a result, reached an incorrect legal conclusion when it applied HB 2415 to this appeal. 
See Walker, 827 S.W.2d at 840; see also BMC Software, 83 S.W.3d at 794. 
Accordingly, we hold that the trial court abused its discretion in reducing the amount
required to secure Kajima's judgment against Formosa. See Walker, 827 S.W.2d
at 840; see also BMC Software, 83 S.W.3d at 794. We reverse the order of the trial
court dated October 1, 2003 modifying the security. The trial court's March 7, 2003
Order on Motion Approving Substitution of Deposit in Lieu of Supersedeas Bond
remains in effect. The stay we ordered on October 10, 2003 is hereby VACATED. 
 
                                                                        ERRLINDA CASTILLO
                                                                        Justice

Opinion delivered and filed
this 24th day of June, 2004.