COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-462-CV

 

 

MOUNTAIN STATES EMPLOYERS                                         APPELLANTS

COUNCIL, INC. AND S.
LORRIE

RAY

 

                                                   V.

 

COBB MECHANICAL CONTRACTORS,                                       APPELLEE

INC.

 

                                              ------------

 

            FROM THE 48TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








This is an interlocutory appeal by Appellants
Mountain States Employers Council, Inc. and S. Lorrie Ray from the trial court=s order
denying their special appearance in a legal malpractice action filed by
Appellee Cobb Mechanical Contractors, Inc. (ACMC@).[2]  For the reasons set forth below, we will
affirm the trial court=s order.

II.  Factual and Procedural Background

Mountain States is a Colorado nonprofit
corporation.  Employers may become Amembers@ of
Mountain States by completing an application and paying dues.  Mountain States then assists its members with
employment and labor matters.  Mountain
States=s
principal employees are licensed attorneys, one of whom was S. Lorrie Ray, an
individual residing in Colorado.  CMC was
a member of Mountain States. 

CMC is a Colorado corporation with its principal
place of business in Colorado Springs, Colorado.  In 1993 and 1994, CMC performed mechanical
work for two prisons being built in Potter County, Texas, and Dallam County,
Texas.  The United Association of
Plumbers and Pipe Fitters, Local Union No. 196, AFL-CIO filed an unfair labor
practice charge with the National Labor Relations Board (NLRB), asserting that
CMC had violated the Labor Management Relations Act by engaging in unfair
hiring practices at the two Texas prison construction sites.  The NLRB in Fort Worth, Texas, issued a
complaint and a notice of hearing.  








About three months after the complaint issued,
CMC engaged the services of Appellants to represent CMC in the NLRB
proceeding.  Appellants provided legal
representation to CMC in connection with the Texas NLRB proceeding, including
the pretrial investigation in Texas, the filings of briefs and other legal
documents in Texas, and representation at the administrative trial before an
administrative law judge (ALJ) in Amarillo, Texas, from November 8 through 10,
1994. 

The ALJ ultimately rendered a decision adverse to
CMC, concluding that CMC had committed unfair labor practices.  The ALJ decision stated that A[i]f no
exceptions are filed as provided by Sec. 102.46 of the Board=s Rules
and Regulations, the findings, conclusions, and recommend[ations] Order shall,
as provided in Sec. 102.48 of the Rules, be adopted by the Board and all
objections to them shall be deemed waived for all purposes.@  Although AppellantsCon
behalf of CMCCprepared exceptions to the ALJ
decision, the exceptions were not timely filed, and the NLRB subsequently
adopted the ALJ=s findings and conclusions
because no statement of exceptions had been timely filed. 








AppellantsCagain on
behalf of CMCCfiled a motion for
reconsideration of the NLRB order.  The
NLRB declined reconsideration, and AppellantsCon
behalf of CMCCpursued a variety of legal
remedies and compliance-phase appeals and hearings for the next ten years.  As a result, the NLRB proceeding took
approximately eleven years to resolve and was finally settled in December
2005.  Ultimately, CMC was ordered to pay
certain sums to various individuals, plus interest and FICA withholding. 

CMC brought the underlying legal malpractice
action against Appellants in Texas state court for their alleged negligence in
failing to adequately and properly represent CMC at the NLRB trial in Amarillo
and for their failure to timely file a statement of exceptions to the ALJ decision.  Appellants responded by filing a special
appearance.








Based on the agreement of the parties,[3]
the trial court ruled on Appellants= special
appearance without an evidentiary hearing, after considering the live
pleadings, Appellants= special appearance, CMC=s
response, Appellants= supplemental briefing in
support of their special appearance, and CMC=s
response to Appellants= supplemental briefing.  The trial court denied Appellants= special
appearance.  Appellants requested
findings of fact and conclusions of law, but the record contains none.  Appellants perfected this interlocutory
appeal challenging the trial court=s denial
of their special appearance. 

III.  Affidavit Objection Not Preserved

In their third issue, Appellants claim that the
trial court abused its discretion if it considered the affidavit of CMC=s
President Tom Cobb in deciding to deny Appellants= special
appearance.  Appellants argue that  statements in Cobb=s
affidavit are conclusory and that Cobb is not qualified or competent to testify
about the standard of care for Appellants=
representation of Cobb before the NLRB.  








Appellants=
complaints concerning Cobb=s
affidavit are not preserved for our review. 
Approximately one week before the special appearance hearing, CMC filed
a second amended original petition and a response to Appellants= special
appearance.  Cobb=s
affidavit was attached to CMC=s
response. Appellants subsequently filed supplemental briefing in support of
their special appearance and argued, in part, that A[w]hile
these >new= amended
allegations are clearly intended to suggest that [Appellants] may now
have engaged in potential tortious conduct in Texas, they are nothing more than
bald, conclusory statements that should be disregarded by the Court.@
[Emphasis in original.] This statement in Appellants=
supplemental briefing is directed at the amended allegations in CMC=s second
amended petition, not at Cobb=s
affidavit.  Cobb=s
affidavit is not mentioned.  Nonetheless,
this is the objection that Appellants rely on in making their arguments on
appeal concerning Cobb=s affidavit.

The record does not indicate that an objection to
Cobb=s
affidavit, as opposed to CMC=s second
amended original petition, was ever specifically called to the trial court=s
attention or ruled upon.  Under these
circumstances, we hold that Appellants=
objection to Cobb=s affidavit was not preserved
for our review.  See Tex. R. App. P. 33.1(a)(2); Int=l
Turbine Serv., Inc. v. Lovitt, 881 S.W.2d 805, 808 (Tex. App.CFort
Worth 1994, writ denied).  

Moreover, Appellants=
objection to Cobb=s affidavitCthat
Cobb is not qualified or competent to testify about the standard of care for
Appellants= representation of Cobb before
the NLRBCmight
have merit in a summary judgment proceeding; in the special appearance context,
however, the issue is Mountain States=s and
Ray=s
contacts with Texas, which Cobb may and did testify to based on his personal
knowledge.  See Tex. R. Civ. P. 120a(3).  Thus, if Mountain States=s and
Ray=s
appellate objection to Cobb=s
affidavit had been made and brought to the trial court=s
attention, the trial court would not have erred by overruling their objection
because the objection is invalid in this context.

We overrule Appellants= third
issue.

 








IV.  Denial of Special Appearance

In their first and second issues, Appellants
complain that the trial court erred by denying their special appearance.  Specifically, Appellants challenge the legal
and factual sufficiency of the evidence to support the trial court=s order
denying their special appearance. 

A.      Personal
Jurisdiction

A Texas court may
assert personal jurisdiction over a nonresident defendant if the requirements
of the Texas long-arm statute and due process under the Fourteenth Amendment
are satisfied.  U.S. Const. amend. XIV, ' 1; Tex. Civ. Prac. & Rem. Code Ann. '' 17.041B.045 (Vernon 1997 & Supp. 2007); Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413B14, 104 S. Ct.
1868, 1871B72 (1984); Moki Mac River Expeditions v. Drugg,
221 S.W.3d 569, 574 (Tex. 2007); CSR Ltd. v. Link, 925 S.W.2d 591, 594
(Tex. 1996) (orig. proceeding); TravelJungle v. Am. Airlines,
Inc., 212 S.W.3d 841, 845 (Tex. App.CFort
Worth 2006, no pet.); Michel v. Rocket Eng=g Corp., 45
S.W.3d 658, 668 (Tex. App.CFort
Worth 2001, no pet.).








The Texas long-arm
statute permits Texas courts to exercise jurisdiction over a nonresident
defendant who Adoes business@ in Texas.  Tex. Civ. Prac. & Rem. Code Ann. ' 17.042; BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002); TravelJungle, 212
S.W.3d at 845; SITQ, E.U., Inc. v. Reata Rests., Inc., 111 S.W.3d 638,
645 (Tex. App.CFort Worth 2003, pet. denied).  The statute lists
some activities that constitute Adoing business,@ including the
commission of a tort, in whole or in part. 
Tex. Civ. Prac. & Rem. Code
Ann. ' 17.042; TravelJungle, 212
S.W.3d at 845; Reata, 111 S.W.3d at 645. 
The list of activities set forth in section 17.042 is not exclusive,
however.  BMC Software, 83 S.W.3d
at 795; TravelJungle, 212 S.W.3d at 845.  Section 17.042=s broad language
extends Texas courts= personal jurisdiction only Aas far as the
federal constitutional requirements of due process will permit.@  BMC Software, 83 S.W.3d at 795
(quoting U-Anchor Adver., Inc. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977),
cert. denied, 434 U.S. 1063 (1978)); TravelJungle, 212
S.W.3d at 845; Reata, 111 S.W.3d at 645.

Due process is
satisfied when (1) the defendant has established minimum contacts with the
forum state and (2) the exercise of jurisdiction comports with traditional
notions of fair play and substantial justice. 
Int=l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); BMC Software, 83
S.W.3d at 795; TravelJungle, 212 S.W.3d at 846; Reata, 111 S.W.3d at 645.








A nonresident
defendant who has Apurposefully availed@ itself of the
privileges and benefits of conducting business in a foreign jurisdiction has
sufficient contacts with the forum to confer personal jurisdiction on a court
in that forum.  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 474B76, 105 S. Ct. 2174, 2183 (1985); BMC Software,
83 S.W.3d at 795; TravelJungle, 212 S.W.3d at 846.

Three factors are
important in determining whether a defendant has purposefully availed itself of
the forum:  first, only the defendant=s contacts with
the forum count; second, the acts relied on must be purposeful rather than
merely fortuitous; and third, the defendant must seek some benefit, advantage,
or profit by availing itself of the forum. 
Michiana Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777, 785 (Tex. 2005); Karstetter v. Voss, 184 S.W.3d
396, 403 (Tex. App.CDallas 2006, no pet.); TravelJungle, 212
S.W.3d at 846.








Personal
jurisdiction exists if the nonresident defendant=s minimum contacts
give rise to either specific jurisdiction or general jurisdiction.  Helicopteros Nacionales de Colombia,
466 U.S. at 413B14, 104 S. Ct. at 1872; BMC Software, 83 S.W.3d
at 795; TravelJungle, 212 S.W.3d at 846; Reata, 111 S.W.3d at 646. 
A trial court has general jurisdiction over a nonresident defendant when
that defendant=s contacts in a forum are continuous and systematic so
that the forum may exercise personal jurisdiction over the defendant even if
the cause of action did not arise from or relate to activities conducted within
the forum state.  BMC Software, 83
S.W.3d at 796; TravelJungle, 212 S.W.3d at 846; Reata, 111
S.W.3d at 646.  In contrast, specific
jurisdiction is present if the nonresident defendant=s alleged
liability arises from or is related to an activity conducted within the
forum.  BMC Software, 83 S.W.3d at
796; TravelJungle, 212 S.W.3d at 846B47; Reata, 111
S.W.3d at 646.  When a plaintiff asserts
that a trial court has specific jurisdiction over a nonresident defendant, the
minimum contacts analysis focuses on the relationship among the defendant, the
forum, and the litigation.  Guardian
Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815
S.W.2d 223, 227B28 (Tex. 1991); TravelJungle, 212
S.W.3d at 847; Reata, 111 S.W.3d at 646.

B.     Standard of Review

Whether a trial court has personal jurisdiction
over a defendant is a question of law.  BMC
Software, 83 S.W.3d at 793; TravelJungle, 212 S.W.3d at 845; Reata,
111 S.W.3d at 644.  The plaintiff bears
the initial burden of pleading sufficient allegations to bring a nonresident
defendant within the provisions of the Texas long‑arm statute.  Moki Mac, 221 S.W.3d at 574; BMC
Software, 83 S.W.3d at 793; TravelJungle, 212 S.W.3d at 845; Reata,
111 S.W.3d at 644.  A nonresident
defendant challenging a Texas court=s
personal jurisdiction over it must negate all jurisdictional bases.  BMC Software, 83 S.W.3d at 793; TravelJungle,
212 S.W.3d at 845; Reata, 111 S.W.3d at 644. 








Where, as here, the trial court does not enter
express findings of fact and conclusions of law regarding its ruling on a
special appearance, the reviewing court infers all fact findings necessary to
support the judgment that are supported by the evidence.  BMC Software, 83 S.W.3d at 794B95.  These implied findings may be challenged for
legal and factual sufficiency.  Id.;
TravelJungle, 212 S.W.3d at 845; Michel, 45 S.W.3d at 668. Once it
is determined that the trial court=s
findings are supported by sufficient evidence, or if the material facts are
undisputed, the reviewing court decides as a matter of law whether those facts
negate all bases for personal jurisdiction. 
BMC Software, 83 S.W.3d at 794B95.








Under the legal sufficiency standard of review,
we view the evidence in the light most favorable to the challenged finding and
indulge every reasonable inference that would support it.  City of Keller v. Wilson, 168 S.W.3d
802, 822 (Tex. 2005).  We must credit
favorable evidence if a reasonable fact‑finder could and disregard
contrary evidence unless a reasonable fact‑finder could not. Id. at
827.  There is legally insufficient
evidence or Ano evidence@ of a
vital fact when (a) there is a complete absence of evidence of a vital fact,
(b) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact, (c) the evidence offered to
prove a vital fact is no more than a mere scintilla, or (d) the evidence
conclusively establishes the opposite of the vital fact.  Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997), cert. denied, 523 U.S. 1119
(1998).  More than a scintilla of
evidence exists to support a finding if the evidence would allow reasonable and
fair‑minded people to differ in their conclusions.  Id.

In reviewing the factual sufficiency of the
evidence, we consider and weigh all of the evidence in the record, and we may
overturn a judgment only if it is so against the great weight and preponderance
of the evidence as to be clearly wrong and manifestly unjust.  Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); Dyson v. Olin Corp., 692 S.W.2d 456, 457 (Tex. 1985).








The scope of our review includes all evidence
before the trial court on the issue of personal jurisdiction.  TravelJungle, 212 S.W.3d at 845; Reata,
111 S.W.3d at 645; Michel, 45 S.W.3d at 667; see also Hotel Partners
v. Craig, 993 S.W.2d 116, 121 (Tex. App.CDallas
1994, writ denied) (stating that A[i]n
determining whether [defendants] carried this burden@ of
negating all bases of personal jurisdiction, Awe
review all the evidence that was before the trial court@).  The trial court here, based on the agreement
of the parties, ruled on Appellants= special
appearance without an evidentiary hearing after considering the live pleadings,
Appellants= special appearance, CMC=s
response, Appellants= supplemental briefing in
support of their special appearance, CMC=s
response to Appellants= special appearance, and
documents attached to these items. 
Consequently, we review these filings.

C.     CMC=s
Allegations and Evidence of Specific Personal Jurisdiction

CMC=s second
amended original petition, which the trial court expressly indicated that it
had considered in ruling on Appellants= special
appearance, alleged that the trial court possessed specific jurisdiction over
Appellants because their contacts with the State of Texas were purposeful and
the cause of action asserted arose from or relates to those contacts:

$                  
Appellants agreed to represent CMC in connection with a complaint
initiated by the Region 16 Director of the NLRB in Fort Worth, Texas, relating
to job sites in Amarillo and Dalhart, Texas;

 

$                  
In connection with the NLRB proceeding, Appellants filed an answer to
the complaint with the NLRB in Fort Worth, Texas;

 

$                  
In connection with the NLRB proceeding, Appellants made an appearance
in the proceeding in Fort Worth, Texas;

 

$                  
In connection with the NLRB proceeding, Appellants personally appeared
in the State of Texas to represent CMC at a trial in Amarillo that occurred
from November 8 through 10, 1994;

 

$                  
In connection with the NLRB proceeding, Appellants personally appeared
in the State of Texas to interview witnesses prior to trial;

 

$                  
In connection with the NLRB proceeding, Appellants made multiple
telephone calls to representatives of the NLRB in Texas; 

 

$                  
In connection with the NLRB proceeding, Appellants made multiple
telephone calls to persons other than the NLRB;

 








$                  
In connection with the NLRB proceeding, Appellants requested the
issuance by the NLRB of subpoenas for witnesses to appear at the trial in
Amarillo, Texas; and

 

$                  
In connection with the NLRB proceeding,
Appellants filed numerous pleadings and other matters with the NLRB in Fort
Worth, Texas. 

D.     Appellants= Special
Appearance and Supplemental Briefing

Appellants= special
appearance alleged that specific jurisdiction did not exist.  Appellants argued that their representation
of CMC evolved from the membership agreement that was executed in
Colorado.  Appellants also contend that
their representation of CMC before a federal agency in Texas, rather than a
Texas state court, falls short of the Apurposeful
availment@ requirement.  And finally, Appellants argue on appeal that
the crux of CMC=s malpractice claim concerns the
untimely exceptions and point out that the exceptions were drafted in Colorado
for filing in Washington, D.C.








In Ray=s
affidavit, which was attached in support of Appellants= special
appearance, she averred that all research, preparations, pleadings, and correspondence
pertaining to the NLRB proceeding originated in Mountain States=s
offices in Denver and that her contact with CMC occurred with personnel located
at CMC=s
offices in Colorado Springs, Colorado. 
Ray admitted that she attended the hearing before the ALJ in November
1994.  Ray stated that after the ALJ
decision was rendered, she prepared exceptions at the Denver office and sent
them to the NLRB in Washington, D.C., via overnight mail.  Ray concluded her affidavit by stating that
she had not visited Texas as a representative of Mountain States for any reason
other than the hearing in 1994. 

Appellants=
supplemental briefing in support of their special appearance claims that CMC Agoes to
great lengths to stretch the number of perceived specific jurisdictional
contacts [Appellants] have with the State of Texas@ but
that their allegations exclusively relate to the three-day NLRB hearing in
Texas.  Appellants contend that this Acase is,
and has always been, about [Appellants=] alleged
failure to timely file exceptions with the NLRB in Washington, D.C.@ 

E.     Specific Jurisdiction Analysis

CMC bore the initial burden of pleading
sufficient facts to invoke personal jurisdiction over Appellants under the
Texas long‑arm statute.  Moki
Mac, 221 S.W.3d at 574 (citing Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 807 (Tex. 2002), cert. denied, 537 U.S. 1191
(2003)).  Appellants then had the burden
of negating all forms of personal jurisdiction that CMC alleged.  Id.








Here, the facts pleaded by CMC, and indeed not
disputed by Appellants, establish that Mountain States, through its attorneys
including Ray, provided legal representation in connection with the NLRB
proceeding before an ALJ of the NLRB in a commissioner=s
courtroom in Amarillo, Texas.  The
proceeding concerned alleged unfair employment practices that had occurred in
Texas. There is no evidence in the record that Appellants associated local
counsel;[4]
instead, Appellants traveled to Texas to investigate the claims, interviewed
witnesses in Texas, filed pleadings and documents in Texas, obtained subpoenas
from the NLRB in Texas, and made phone calls to Texas.  As previously mentioned, CMC sued Appellants
in Texas for alleged legal malpractice arising out of Appellants= legal
representation of CMC in the Texas NLRB proceeding.








Allegations that a
nonresident defendant did business in Texas by committing a tort (such as legal
malpractice), in whole or in part, in Texas are sufficient to satisfy the
literal language of the Texas long-arm statute but not due process
concerns.  See Tex. Civ. Prac. & Rem. Code Ann. ' 17.042(2); Moki
Mac, 221 S.W.3d at 574B75; Michiana,
168 S.W.3d at 788; TravelJungle, 212 S.W.3d at 849.  The Texas long-arm statute will reach as far
as the federal constitutional requirements of due process allow.  Moki Mac, 221 S.W.3d at 575 (citing Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d at 226).  Thus, we next analyze whether, here, in this
case, Texas=s exercise of personal
jurisdiction over Appellants is limited by due process concerns.








As previously mentioned, federal due process
requirements limit a state=s power
to assert personal jurisdiction over a nonresident defendant; personal
jurisdiction is proper when (1) the nonresident defendant has established
minimum contacts with the forum state, and (2) the exercise of jurisdiction comports
with traditional notions of fair play and substantial justice.  Moki Mac, 221 S.W.3d at 575.  We thus proceed to a minimum contacts
analysis.  Here, Appellants purposefully
availed themselves of the privilege of conducting activities (legally representing
CMC) in Texas.  Appellants invoked the
benefits and protections of Texas law by interviewing witnesses, filing legal
documents, and obtaining the issuance of subpoenas.  These contacts with Texas were the contacts
of Appellants, not the unilateral activity of another party or a third
person.  These contacts by Appellants
with Texas were purposeful, not random, fortuitous, or attenuated.  And Appellants sought some benefitChere the
providing of services to its paid membersCby
availing themselves of the opportunity to represent its members in Texas.  See, e.g., Jackson v. Kincaid,
122 S.W.3d 440, 449B50 (Tex. App.CCorpus
Christi 2003, pet. granted, judgm=t
vacated w.r.m.) (holding that Texas court possessed specific jurisdiction over
nonresident attorney defendant); see also Tempest Broad. Corp. v.
Imlay, 150 S.W.3d 861, 876 (Tex. App.CHouston
[14th Dist.] 2004, no pet.) (same); Rowland & Rowland, P.C. v. Tex.
Employers Indem. Co., 973 S.W.2d 432, 436 (Tex. App.CAustin
1998, no pet.) (same).








We next address the Aarise
from or relate to@ requirement of specific
jurisdiction.  Moki Mac, 221
S.W.3d at 579B80.  Appellants claim that their actions in Texas
do not arise from and are not related to CMC=s causes
of action against it because CMC=s causes
of action against it actually arise from CMC=s
membership contract with Mountain States.[5]  Appellants claim that the contract was
entered into between Colorado residents in Colorado and that CMC=s claims
should be litigated in Colorado.  CMC=s pleadings,
however, clearly state a cause of action for legal malpractice by alleging that
Defendants Anegligently failed to defend and
advise Plaintiff with respect to the NLRB proceedings, including the compliance
proceedings.@ 
The trial court did not abuse its discretion by construing CMC=s
pleadings as pleading a tort cause of action or by rejecting Appellants=
attempts to recast CMC=s claims purely as one for
breach of contract.








For a nonresident defendant=s forum
contacts to support an exercise of specific jurisdiction, there must be a
substantial connection between those contacts and the operative facts of the
litigation.  Moki Mac, 221 S.W.3d
at 584B85.  Appellants agreed to represent CMC at an NLRB
proceeding in Texas and their alleged legal malpractice occurred during the
course of that representation.  There is
a substantial connection between Appellants=
contacts with Texas and the operative facts of the litigation.  See, e.g., Tempest Broad. Corp., 150
S.W.3d at 876 (holding that nonresident defendant attorney=s
representations in Texas that formed the basis of plaintiff=s
misrepresentation and tortious interference with contract claims supported
trial court=s exercise of specific
jurisdiction).








Appellants also claim that the relatedness
requirement between Appellants=
contacts and CMC=s claims is lacking because (1)
the heart of CMC=s legal malpractice claim
involves Appellants= alleged failure to timely file
exceptions, and the exceptions were prepared in Colorado to be filed in
Washington, D.C.; and (2) it was CMC=s
actions in engaging in an unfair labor practice that resulted in the proceeding
in Texas, not Appellants= actions, and thus Appellants
cannot be said to have chosen Texas as a forum. 
The Corpus Christi Court of Appeals addressed arguments similar to those
raised by Appellants in Jackson v. Kincaid.  122 S.W.3d at 449B50.  In Jackson, Oklahoma lawyers provided
legal representation in connection with their clients=
bankruptcy proceedings in a Texas federal bankruptcy court.  Id. at 444, 448.  The Oklahoma lawyers appeared in bankruptcy
court in Texas on their clients= behalf
and also conducted telephone hearings and prepared and transmitted to Texas a
mediation settlement.  Id. at
446.  The clients sued their Oklahoma
lawyers in Texas, alleging a cause of action for legal malpractice, among
others.  Id. at 444.  In filing their special appearance, the
Oklahoma lawyers argued that the bulk of the legal representation that they
provided in connection with the bankruptcy was performed in Oklahoma and that
they did not have a choice about the forum, which their clients had
chosen.  Id. at 449B50.

The Jackson court stated that the Oklahoma
lawyers had a choice about whether to represent their clients in Texas, that
the Oklahoma lawyers chose to do so, and that they wereCvia
their special appearanceCseeking to avoid the
consequences of that choice.  Id.
at 450.  The Jackson court thus
determined that the Oklahoma lawyers reasonably could have anticipated being
called into a Texas court because their activities in providing legal
representation in connection with the bankruptcy included direct acts within
Texas as well as conduct outside Texas and that such contacts were not random,
fortuitous, or incidental but instead each lawyer=s
appearance was a substantial, purposeful contact directed at the State of
Texas.  Id.  The Jackson court ultimately held that
the clients= causes of action related to or
arose from the Oklahoma lawyers=
appearances and legal representation on behalf of their clients in the
bankruptcy and that the Oklahoma lawyers did not meet their burden of negating
specific jurisdiction as a basis for the trial court=s
exercise of jurisdiction.  Id.








The Jackson court=s
reasoning applies here as well.  Although
some of the preparation that Appellants performed for the NLRB proceeding took
place outside Texas, CMC=s cause of action for legal
malpractice specifically relates to Appellants= legal
representation in a proceeding before an ALJ in Texas.  Appellants did not associate local counsel
but undertook to represent CMC in a legal proceeding that Appellants knew was
pending in Texas.  Because Appellants
chose to represent CMC in Texas, they cannot now seek to avoid the consequences
of that choice.  The evidence
demonstrates that Appellants=
contacts with Texas were not random, fortuitous, or incidental and that a
substantial connection exists between Appellants=
purposeful contacts with Texas and the operative facts of CMC=s legal
malpractice claim.  See id. at
449B50; Cartlidge
v. Hernandez, 9 S.W.3d 341, 348B50 (Tex.
App.CHouston
[14th Dist.] 1999, no pet.). 








Finally, we analyze whether the trial court=s
assertion of jurisdiction over Appellants comports with Atraditional
notions of fair play and substantial justice.@  In making this determination we consider the
following factors:  (1) the burden on the
defendants; (2) the interests of the forum state in adjudicating the dispute;
(3) the plaintiff=s interest in obtaining
convenient and effective relief; (4) the interstate judicial system=s
interest in obtaining the most efficient resolution of controversies; and (5)
the shared interest of the several states in furthering fundamental,
substantive social policies.  Asahi
Metal Indus. Co. v. Superior Court of Ca., 480 U.S. 102, 113B16, 107
S. Ct. 1026, 1033B34 (1987); Burger King,
471 U.S. at 477, 105 S. Ct. at 2184; World‑Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 292, 100 S. Ct. 559, 564 (1980).  Only in
rare cases will the exercise of jurisdiction not comport with fair play and
substantial justice when the nonresident defendant has purposefully established
minimum contacts in the forum state.  Guardian
Royal Exch. Assurance, Ltd., 815 S.W.2d at 231; see also Schlobohm v.
Schapiro, 784 S.W.2d 355, 358 (Tex. 1990) (stating that because minimum
contacts analysis encompasses so many fairness considerations, it has become
less likely that exercise of jurisdiction will fail fair-play analysis).








Here, Appellants argue that Texas does not have a
compelling interest to supply a forum for resolution based again on their
characterization of CMC=s claims as ones for breach of a
contract entered into in Colorado between Colorado residents, that the evidence
is located primarily in Colorado, that their offices are in Colorado, and that
it would be burdensome for them to submit to a foreign state=s
judicial process.  As we have previously
stated, CMC pleaded a cause of action for legal malpractice.  And the State of Texas has a substantial
interest in this litigation because Appellants agreed to represent CMC, knowing
that the proceedings were based in Texas; the complaint had issued from the
Fort Worth office of the NLRB; and the alleged unfair labor practices occurred
in Texas.  Appellants, moreover, proved
their willingness to travel to Texas when they appeared on CMC=s behalf
for the NLRB hearing.  Appellants=
arguments that they lack a physical presence in this State and that it is
inconvenient for them to attend a trial in Texas have been rejected as grounds
purportedly negating specific jurisdiction. 
See, e.g., Cartlidge, 9 S.W.3d at 350 (citing Burger King,
471 U.S. at 475B76, 105 S. Ct. at 2174).[6]  Other than the arguments and positions we
have addressed, Appellants have not identified any considerations that would
render jurisdiction in Texas unreasonable or that provide them with a vested
right not to be sued in Texas.  See
Burger King, 471 U.S. at 477, 105 S. Ct. at 2184B85.  We therefore hold that the trial court=s
exercise of personal jurisdiction over Appellants would not offend traditional
notions of fair play and substantial justice. 
See Tempest Broad. Corp., 150 S.W.3d at 877; Jackson, 122
S.W.3d at 451; Cartlidge, 9 S.W.3d at 350; Rowland & Rowland,
973 S.W.2d at 436.








Inferring all fact findings necessary to support
the judgment that are supported by legally and factually sufficient evidence in
the record before us, and viewing all of the evidence considered by the trial
court in ruling on the special appearances, we hold that as a matter of law the
facts do not negate the trial court=s
exercise of specific jurisdiction over Appellants.  See BMC Software, 83 S.W.3d at
794B95.  Accordingly, we overrule Appellants= first
and second issues. 

V.  Conclusion

Having overruled Appellants= three
issues, we affirm the trial court=s order
denying their special appearance.

 

SUE
WALKER

JUSTICE

 

PANEL A:   CAYCE, C.J.; GARDNER and WALKER, JJ.

 

DELIVERED: July 3, 2008

 

 











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(7) (Vernon Supp.
2007).





[3]The record reflects that
the trial court heard argument on the special appearance, recessed the hearing
to permit the parties to file additional briefing and proof, and stated it
would rule on the special appearance when the parties informed the trial court
that they had filed everything necessary. 





[4]In fact, Mountain States=s website advertises that
it provides employment law services to its members, including representation
before any state or federal administrative agency, and that they represent
their members where the action takes place. 
Mountain States Employers Council, Inc., http://www.msec.org (last
visited June 26, 2008).





[5]In support of their
no-specific-jurisdiction-exists arguments, Appellants cite several legal
malpractice cases, including Markette v. X-Ray X-Press Corp., 240 S.W.3d
464, 468B69 (Tex. App.CHouston [14th Dist.]
2007, no pet.) (holding that Texas client did not plead facts sufficient to
give rise to specific jurisdiction because Indiana attorney and firm, who were
hired to represent Texas client in action pending in Indiana, were not substantially
connected to the operative facts of the litigation by merely giving legal
advice about Texas law); Klenk v. Bustamante, 993 S.W.2d 677, 679B81, 683 (Tex. App.CSan Antonio 1998, no
pet.), abrogated on other grounds by BMC Software, 83 S.W.3d 789
(holding that assertion of jurisdiction over in-house counsel from Smith Barney=s New York headquarters
was improper as a matter of law where, at most, the attorneys engaged in
long-distance communication from New York with the Texas appellee, who was a
former employee of Smith Barney); Shearson Lehman Bros., Inc. v. Hughes,
Hubbard, & Reed, 902 S.W.2d 60, 63, 65B66 (Tex. App.CHouston [1st Dist.] 1995,
writ denied) (holding that Los Angeles firm=s contacts with Texas were inadequate to
establish specific jurisdiction because client=s claims against firm did
not arise as a result of firm=s contacts with Texas during security
registration process), cert. denied, 517 U.S. 1245 (1996); Geo-Chevron
Ortiz Ranch #2 v. Woodworth, No. 04-06-00412-CV, 2007 WL 671340, at *3
(Tex. App.CSan Antonio Mar. 7, 2007,
pet. denied) (mem. op.) (holding that attorney and law firm=s sporadic contacts of
two litigation-related trips to Texas and communications by telephone were not
sufficient to confer general jurisdiction where litigation occurred in
Georgia).  As is apparent from the
preceding parentheticals, each case cited by Appellants is factually
distinguishable from the present case.





[6]While the inconvenience
of the forum is to be considered, it is not a constitutional obstacle to the
assertion of jurisdiction if due process is otherwise satisfied.  Cartlidge, 9 S.W.3d at 350.